## Case No. 595.

### ASTOR v. GIRARD.

[4 Wash. C. C. 711.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1827.

LIMITATION OF ACTIONS — RUNNING OF STATUTE — WHEN CAUSE OF ACTION ACCRUES.

At what time the cause of action may be said to accrue, from which to date the commencement of the running of the act of limitations.

At law. This case resembles that of M'Culloch v. Girard, [Case No. 8,737,] which was tried at the October sessions of this court in 1822, the present plaintiff having been one of the persons on whose account Mr. Jones made the contract with the defendant. The few points of difference between the two cases are totally immaterial to the point decided in this cause, and therefore are not stated. Besides the general issue, the defendant in the present case pleads the act of limitations, and the question to which this plea gave rise was, whether the six years began to run from the 2d of October, 1816, when the interest on the stock paid by the plaintiff to the defendant was received by the latter, or from the 25th of November of that year, when the resolution of the bank of the 5th of that month was rescinded, and if not then, from the 7th January, 1817, when the resolution was passed for restoring to those subscribers who had paid the interest under the first resolution, the sums so respectively paid by them? The agreement to enter an amicable action in this case was signed on the 20th, and was filed on the 27th of November, 1822.

Thomas Sergeant, John Sergeant and Chauncey, for plaintiff.

J. R. Ingersoll and Mr. Binney, for defendant.

Before WASHINGTON, Circuit Justice, and PETERS, District Judge.

WASHINGTON, Circuit Justice. Thinking, as I do, that this action is barred by the act of limitations, I deem it unnecessary to notice the case upon its merits. It is contended by the plaintiff's counsel, that the cause of action did not arise until the 7th of January, 1817, when the bank of the United States resolved to restore to the subscribers the interest which they had paid under the resolve of the 5th of November, 1816, or at farthest from the 25th of November, 1816, when the resolution of the 5th, asserting the right of the bank to this interest, was rescinded. That the material question to be decided is, which of those resolutions amounted to a renunciation by the bank of their right to this interest, since the plaintiff could have no right to it until that act was

[1] [Published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

performed. If the earliest day, viz. the 25th of November, should be taken, this action was brought five days before the expiration of the six years. I do not agree with the plaintiff's counsel in the position upon which their whole argument upon this point is founded; which is, that the relinquishment by the bank of its claim to the October interest on the subscribed stock was essential to the plaintiff's recovery in this action.

In the case of M'Culloch v. Girard, [Case No. 8,737,] the right of the bank to this interest was asserted by the defendant as a bar to the plaintiff's right of recovery. The court thought it a sufficient answer to the objection that the bank had, by its resolutions of the 25th of November and 7th of January, relinquished to the subscribers its right to the interest; after which it was not competent to the defendant to set it up as a defence in that action. We might have added, that such claim was no answer to that action, whether it was relinquished or not; but this was either not thought of, or the first reason being considered conclusive, it was deemed unnecessary to go further.

In deciding this question it is necessary to keep always in mind the ground of this action. It is not founded upon a right to this interest against all the world, but against the defendant, in consequence of a special agreement, which forms the basis of the action. If a suit could have been brought by the plaintiff against the United States for the recovery of this interest, or a mandamus to the proper officer, commanding him to pay the interest to the plaintiff, the unquestionable right of the bank, before it was relinquished, would have been a conclusive answer to such suit or application. But the present suit is founded upon the agreement of the defendant that the plaintiff should participate with him in his subscription, to the amount of three thousand shares, with every advantage he would have if he were actually a subscriber. This agreement was fully executed on the part of the plaintiff by the payment of the coin, and the transfer of the stock, forming the first instalment on two thousand shares.

Now the question, and almost the only one arising in this view of the case is, what would have been the situation, and what the rights of the plaintiff in relation to this interest, if Mr. Jones had strictly complied with his order, by subscribing for two thousand shares in the name of the plaintiff; instead of making the contract he did with the defendant? The answer is obvious. He would have been placed in the shoes of the defendant as to the interest on $50,000 of stock, and, as the legal owner of the stock, would have been entitled to draw that interest, and to use and retain it against all the world, except the bank of the United States. How then can it be said truly that the plaintiff participated with the defendant in his subscription to a certain amount, and with every advantage of a subscriber, if the interest, to the use and possession of which he would have been entitled had he subscribed, could have been legally retained by the defendant?

If this suit had been brought on the 3d of October 1816, could the defendant have defended himself by setting up the acknowledged right of the bank to this interest? Clearly, I think, he could not. The defendant held the money subject to the better title of the bank. The plaintiff claimed under his contract, and had a right to claim the money to the extent of two hundred shares, subject to the same title. The value of the advantage of possessing and using this money, could have formed no part of the case in such an action. The interest received by the defendant was, by virtue of his contract, received to the use of the plaintiff; and to retain it, was a breach of that contract. To an action to recover damages for the breach of an agreement to convey property, or to a bill for a specific performance of such an agreement; it would surely be no answer in the mouth of the defendant, that some third person had a better title than himself to the property. The plaintiff may well ask, in reply, what that is to the defendant, if he, the plaintiff, is willing, or is bound, to accept a conveyance subject to such outstanding title in a third person? The cause of action then in this case arose upon the receipt of this interest by the defendant, and his failure to pay it over to the plaintiff; which happened more than six years before this action was brought. The jury found for the defendant.

NOTE, [from original report.] A motion was made, and argued at the succeeding term for a new trial, which after mature consideration was denied.